## MARYLAND CASUALTY CO. v. BOARD OF EDUCATION OF CLIFTON, N. J.

Circuit Court of Appeals, Third Circuit.
September 13, 1929.

No. 4062.

John M. Enright and McDermott, Enright & Carpenter, all of Jersey City, N. J., for appellant.

Albert Comstock and William B. Gourley, both of Paterson, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case it appears Thomas J. O'Halloran Company, Inc., contracted in writing with the board of education of Clifton, N. J., to build a high school for the sum of $445,734, in accordance with certain plans and specifications. The Maryland Casualty Company became the contractor's surety, its bond providing that the contractor should "well and faithfully do and perform said contract." In due course the contractor began the work, failed to perform, abandoned it, and was

752

adjudged bankrupt. For such work as had been done the contractor had received $34,409.70 on architect's allowances. Thereafter the board of education duly advertised for bids to complete the work, and awarded the contract therefor to the McClary Corporation, the lowest bidder, for $441,223. The alleged loss of the board thereby was $32,898.70, for which sum, together with 5 per cent. architect's fees on such excess, viz. $1,644.93, and $106.16 expense of advertising, in all $34,649.80, this suit was brought by the board of education against the surety company.

At the close of the testimony the plaintiff asked the court to instruct the jury to render a verdict in its favor for said entire sum of $34,649.80. The defendant asked for a verdict in its favor. In this situation the court, acceding to neither request, directed a verdict for $17,300.96. In view of the case of Buetell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654, both parties having asked for binding instructions, to which neither was entitled, it would seem the court was warranted in deciding the case itself. The plaintiff seems to have acquiesced in that view and has taken no appeal. The defendant has appealed and raises the question of the right of the plaintiffs to make certain payments to the contractor upon the architect's certificate, and contends that such payments were unlawfully made, and by reason thereof the surety is released.

As to the powers of the architect, the contract provided: "The architect shall from time to time, as the work progresses, certify to the party of the first part, in writing, the value of the work performed by the party of the second part under this contract to the date of such certificate, and thereupon the party of the first part shall pay to the party of the second part, eighty-five per centum of the amount so certified. * * * Should any dispute arise respecting the true construction or meaning of the drawings or specification, the same shall be decided by the architect, and his decision shall be final and conclusive." The contract further provided: "The contractor before receiving the first payment on account of the work, shall furnish a schedule satisfactory to the engineers and architects covering the providing, setting in place and completing, labor and profit included, of the various items of work in this contract, affixing a unit price to each." And further that: "If payments are made on valuation of work done, the schedule, as required by paragraph 32, shall be used as a basis for certificates of payment." It fur-

ther provided: "The contractor or contractors to whom the work is awarded will be required to furnish a satisfactory surety company's bond in the full amount of the contract for the faithful performance of the work." It likewise provided: "The contractor shall maintain such insurance as will protect him from his liability for damages for personal injuries, including death, which may arise from operations under this contract."

In pursuance of the contract provisions quoted, the contractor subdivided its work into 51 units, and the architect accepted such fixation as the basis of payment, and in pursuance thereof directed the board of education to make the payments it did. Of these certificates and payments as a whole the surety company complained, and especially as to the items $6,866, the premium paid for the surety bond of the defendant here sued upon, $3,300, the premium for liability insurance, and the excavation charge of $13,000. At the conclusion of the case the court proceeded to direct the jury how much to find.

We are of opinion the court would have been guilty of error, had it acceded to the defendant's insistence that the certificates of the architect were unwarranted in toto, and therefore it was entitled to a verdict. The contract made the architect the controller of progressive payments, and, in the absence of bad faith, his orders must govern. As to the item of premium paid for the surety bond, we are not advised on what theory the court disallowed it; but, as the plaintiff has not appealed and the defendant has no cause of complaint, we express no opinion as to the court's action in disallowing the premium for the surety bond. Nor are we advised on what theory the court struck $9,500 from the excavation charge of $13,000 allowed by the architect. But as the plaintiff has not appealed, and we are of opinion the architect's certificate undoubtedly warranted the board of education in paying the $3,500, the court allowed, we see no warrant for reversing the case.

This leaves the item of $3,300 indemnity insurance which the court allowed. On what theory it differentiated it from the premium on the surety bond, we are not advised. But we are of opinion no error was committed in its allowance. Indemnity insurance was required as a condition precedent to the award of the contract, and manifestly the premium had to be paid when the policy issued. It was made an unit of payment by the contractor and architect. It was like other preliminary things, which had to be done in preparation for and in advance of the

actual construction of the building. In the nature of things, questions would arise as to the apportionment thereof and when payment should be directed. We cannot say as a matter of law that it was not within the scope of the architect's power to determine that so vital a matter as indemnity insurance (which might be called into play the first day work was begun) should await payment to the end of the work. If the apportionment of the unit basis of payment made by the contractor was such a vital matter as this surety company now contends, it was singularly remiss in its duty to its shareholders in not looking into it before it gave its bond and received its premium. So regarding, it follows the court committed no error in its allowance.

Without referring in detail to other matters involved, all of which have been considered, we are of opinion the judgment should be affirmed.